WALKER STEVENS CANNOM LLP
Hannah L. Cannom (SBN 245635)
hcannom@wscllp.com
Bethany M. Stevens (SBN 245672)
bstevens@wscllp.com
500 Molino Street #118
Los Angeles, CA 90013
Telephone: (213) 337-9972
Facsimile: (213) 403-4906

*Attorneys for Non-Party Apple Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN THE MATTER OF A DEPOSITION SUBPOENA SERVED IN:<br><br>UMG RECORDINGS, INC., CAPITOL RECORDS, LLC and SONY MUSIC ENTERTAINMENT,<br><br>Plaintiffs,<br><br>v.<br><br>SUNO, INC., and JOHN DOES 1-10,<br><br>Defendants. | CASE NO. 3:26-MC-80303<br><br>[RELATED TO CASE NO 1:24-CV-11611 PENDING IN THE DISTRICT OF MASSACHUSETTS]<br><br>**NON-PARTY APPLE INC.'S NOTICE OF MOTION AND MOTION TO QUASH DEPOSITION SUBPOENA OR, IN THE ALTERNATIVE, MOTION FOR PROTECTIVE ORDER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:<br>Time:<br>Courtroom: |

**TO ALL PARTIES AND COUNSEL OF RECORD:**

Please take notice that Apple Inc. ("Apple") will and hereby does move this Court to quash or, in the alternative, motion for a protective order regarding the deposition subpoena that Suno Inc. ("Suno") served on Apple on September 30, 2026 (*See* Declaration of Miranda D. Means in Support of Motion to Quash Plaintiffs' Subpoenas ("Means Decl."), Ex. 8, the "Deposition Subpoena")) requesting the deposition of a corporate representative of Apple. The Subpoena was served on Apple in the Northern District of California in connection with *UMG Recordings, Inc. v. Suno, Inc.*, Case No. 24-cv-11611-FDS (the "Massachusetts Litigation"), pending in the United States District Court of Massachusetts, to which Apple is a non-party. Pursuant to Civil Local Rule 37-1, counsel met and conferred regarding this motion on October 8, 2026.

The motion is brought on the grounds that the deposition is improper under Federal Rules of Civil Procedure 26 and 45 because Apple is not a party to the Massachusetts Litigation, the subpoena concerns topics that are irrelevant, overbroad, and disproportionate to the needs of the case, the information is equally available from party discovery, and the information sought is the highly confidential, proprietary information of Apple for which Suno has not demonstrated a requisite need.

Apple makes this motion based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declarations of Miranda D. Means and Declaration of Sam Bottoms ("Bottoms MTQ Declaration") in support thereof, the files and records in this case, and any argument as may be presented at the hearing on the Motion.

**STATEMENT OF THE ISSUES**

1. Should the Court quash Suno's subpoena as unduly burdensome and disproportionate to the needs of the case under Fed. R. Civ. P. 45(d)(3)(A) because it seeks testimony on irrelevant, disproportionate, and competitively sensitive topics regarding artificial intelligence ("AI") generated sound recordings and business negotiations?

DATED: October 13, 2026

Respectfully submitted,
WALKER STEVENS CANNOM LLP

By: */s/ Bethany M. Stevens*

Hannah L. Cannom (SBN 245635)
hcannom@wscllp.com
Bethany M. Stevens (SBN 245672)
bstevens@wscllp.com
500 Molino Street #118
Los Angeles, CA 90013
Telephone: (213) 337-9972
Facsimile: (213) 403-4906

*Attorneys for Non-Party Apple Inc.*

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 3

A. The Massachusetts Litigation ..... 3

B. Apple's Prior Productions in the Massachusetts Litigation ..... 4

C. Suno's Document Subpoena ..... 6

D. Suno's Deposition Subpoenas ..... 7

ARGUMENT ..... 9

III. THE DEPOSITION SUBPOENA SHOULD BE QUASHED ..... 9

A. Legal Standard ..... 9

B. The Deposition Subpoena Should be Quashed Because it Seeks Irrelevant Information ..... 11

C. The Deposition Subpoena Should be Quashed Because it Seeks Information that is Equally Obtainable from Party Discovery ..... 14

D. The Deposition Subpoena Should be Quashed Because it Seeks Highly Confidential Information ..... 15

IV. IN THE ALTERNATIVE, THE COURT SHOULD ISSUE A PROTECTIVE ORDER ..... 16

V. CONCLUSION ..... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
300 F.R.D. 406 (C.D. Cal. 2014) .......... 10

*Cacique, Inc. v. Robert Reiser & Co.*,
169 F.3d 619 (9th Cir. 1999) .......... 13

*Dart Indus. Co. v. Westwood Chem. Co.*,
649 F.2d 646 (9th Cir. 1980) .......... 9

*Elec. Scripting Prods., Inc. v. HTC Am., Inc.*,
17-cv-5806, 2021 WL 3773607 (N.D. Cal. Aug. 25, 2021) .......... 14, 16

*Fausto v. Credigy Servs. Corp.*,
C 07-5658, 2008 WL 4793467 (N.D. Cal. Nov. 3, 2008) .......... 17

*Gilead Scis., Inc. v. Merck & Co, Inc.*,
No. 5:13-cv-4057, 2016 WL 146574 (N.D. Cal. Jan. 13, 2016) .......... 11

*Gonzales v. Google, Inc.*,
234 F.R.D. 674 (N.D. Cal. 2006) .......... 10, 16

*Intermarine, LLC v. Spliethoff Bevrachtingskantoor, B.V.*,
123 F. Supp. 3d 1215 (N.D. Cal. 2015) .......... 10, 14

*Last v. M-I*,
Misc. 22-20, 2022 WL 3012206 (C.D. Cal. May 19, 2022) .......... 10

*Moon v. SCP Pool Corp.*,
232 F.R.D. 633 (C.D. Cal. 2005) .......... 10

*Personal Audio LLC v. Togi Entm't., Inc.*,
No. 14-mc-80025, 2014 WL 1318921 (N.D. Cal. Mar. 31, 2014) .......... 14

*Philhower v. Philhower*,
8:24-cv-74, 2024 WL 4720932 (C.D. Cal. Oct. 15, 2024) .......... 16

*Prac. Mgmt. Info. Corp. v. Am. Med. Ass'n*,
121 F.3d 516 (9th Cir. 1997) .......... 12

*Price v. Peerson*,
CV 13-3390, 2014 WL 12687411 (C.D. Cal. Apr. 8, 2014) .......... 14

*Soto v. Castlerock Farming & Transp., Inc.*,
282 F.R.D. 492 (E.D. Cal. 2012) .......... 14

*SPS Techs., LLC v. Briles Aerospace, Inc.*,
CV 18-9536, 2019 WL 13108018 (C.D. Cal. June 24, 2019) ....................16

*In re Subpoena to Apple Inc.*,
No. 5:13-cv-254, 2014 WL 2798863 (N.D. Cal. June 19, 2014)....................10

*In re Subpoena to Produce Documents of Clapp, Moroney, Bellagamba, Vucinich, Beeman & Scheley*,
No. 14-mc-80191, 2014 WL 3784112 (N.D. Cal. July 31, 2014) ....................15

*UMG Recordings, Inc. v. Suno, Inc.*,
No. 24-cv-11611-FDS (D. Mass., Aug. 25, 2026)....................1, 4

*UMG Recordings, Inc. v. Uncharted Labs, Inc.*,
No. 1:24-cv-04777-AKH (S.D.N.Y., Aug. 24, 2026)....................4

*Uncharted Labs, Inc. v. Mechanical Licensing Collective*,
No. 3:26-mc-00020, (M.D. Tenn., Oct. 1, 2026)....................1, 16

*United States v. Capriotti*,
No. 1:11-cv-847, 2012 WL 2994244 (E.D. Cal. July 20, 2012)....................17

*Waymo LLC v. Uber Techs., Inc.*,
No. 17-cv-00939, 2017 WL 2929439 (N.D. Cal. July 7, 2017) ....................9

*Williams v. Cty. of San Diego*,
No. 17-cv-815, 2019 WL 5963969 (S.D. Cal. Nov. 13, 2019)....................11, 13

**Rules**

Fed. R. Civ. P. 26 .................... *passim*

Fed. R. Civ. P. 45 ....................3, 9, 10

## I. INTRODUCTION

The Massachusetts Litigation concerns claims of copyright infringement brought by a group of record labels ("Plaintiffs") against Suno, an artificial intelligence platform used to create music. The labels allege that Suno copied the labels' sound recordings while building Suno's AI models. *See UMG Recordings, Inc. v. Suno, Inc.*, No. 24-cv-11611-FDS (D. Mass., Aug. 25, 2026) at Dkt. 277 ("Amended Compl."). Suno in turn argues, among other things, that its copying of the sound recordings is fair use. *See id.* at Dkt. 281 ("Ans. to Amended Compl."). Apple is not a party to this dispute. Its sole connection to the matter is that its music streaming service, Apple Music, is one of several digital service providers ("DSPs") where the labels' and Suno's music can be played. Apple understands from the parties that they seek information from Apple to inform expert witnesses' analysis of the fourth fair use factor: the effect of Suno-generated works on the music labels' market for their copyrighted works. Apple further understands that Suno seeks information to support its copyright misuse defense.

Despite its tangential connection to the case, for over a year, Apple has been responding to subpoenas issued in the Massachusetts Litigation from both Plaintiffs and Suno, amounting to ***six*** subpoenas to Apple in total.[1] The parties have made an assortment of ever-changing demands on Apple, including seeking highly sensitive information disproportionate to the needs of the case. Apple has cooperated with both parties for more than a year, exchanging over 90 emails and having over 10 conferrals, to negotiate a reasonable scope of non-party discovery and to provide the relevant subset. And Apple has complied. It has produced granular and aggregate data on millions of tracks on Apple Music, two sworn declarations from Sam Bottoms, Senior Director of Services Operations for Apple, and supporting exhibits addressing Apple's AI detection technology and Transparency Tags program, and the prevalence of Suno-generated content on Apple Music. The October 13, 2026 supplemental declaration Apple provided to the parties addresses and resolves outstanding questions from both parties' document subpoenas as well as five of the nine topics covered by the Deposition Subpoena, specifically related to

---

[1] Apple understands that multiple third-party subpoenas in litigation against Suno and competitor Uncharted Labs, Inc. (d/b/a Udio) have been directed to the Mechanical Licensing Collective for music royalty data that includes Apple's data. This motion only addresses subpoenas directed to Apple in the litigation involving Suno. *But see Uncharted Labs, Inc. v. Mechanical Licensing Collective*, No. 3:26-mc-00020, (M.D. Tenn., Oct. 1, 2026), Dkt. 1 ("Uncharted Labs, Inc.'s Motion to Enforce Compliance with Subpoena Against Mechanical Licensing Collective").

Suno-detected works on Apple Music. Suno agreed that the supplemental declaration will resolve its document subpoena. Plaintiffs agreed that the declarations and accompanying data would likely resolve any need for further discovery for Apple, but not Suno.

Despite these agreements on documents, Suno continues to expand the scope of its requests and insists a deposition is necessary. Suno refuses to withdraw its demand for a deposition on four topics that have no apparent relevance to Suno's training models on Plaintiffs' works: (1) Apple's current or ongoing negotiations with Plaintiffs regarding music licensing, royalties, and artificial intelligence initiatives; (2) Apple's ability to operate, and the viability of its Apple Music service without the catalog of one or more Plaintiffs; (3) the types and frequency of streaming fraud on Apple Music, including how fraud is discovered, its causes, and Apple's policies for responding to incidents; and (4) all communications Apple had with Plaintiffs or their agents concerning Suno or this case. These topics are improper, and Suno's Deposition Subpoena to non-party Apple should be quashed or a protective order issued for at least the following reasons.

***First***, the Deposition Subpoena is overbroad and seeks information that is irrelevant to the claims or defenses and disproportionate to the needs of the Massachusetts Litigation. For example, Suno seeks a deposition on Apple Music's approach to streaming fraud. The operative complaint in the litigation does not reference streaming fraud. *See* Amended Compl. Suno is not accused of streaming fraud, and Apple's policies on it have no bearing on whether Suno committed copyright infringement. Suno had difficulty identifying the relevance, arguing only that Plaintiffs were going to argue, in response to Suno's copyright misuse defense, that AI-generated music contributes to streaming fraud. But when Apple conferred on this topic with Plaintiffs about a deposition notice they had served mirroring Suno's, Plaintiffs disclaimed making any such argument in the case about AI training and struggled to provide any reason for the topic's inclusion in a deposition of Apple. The other topics are similarly far afield. For instance, Suno asks Apple to provide testimony on the "long-term commercial viability" of Apple Music without a major music label's catalog, a topic with no apparent link to AI-training. Suno also seeks a deposition on all of Apple's licensing negotiations with Plaintiff, including for longstanding agreements that long predate Suno, but again, such negotiations have no relation to Suno's training of their music-generation models on Plaintiffs' works.

***Second***, even if the information sought from Apple by the Deposition Subpoena were relevant (it is not), the Deposition Subpoena should be quashed because it seeks information that is available through party discovery, a far less demanding path than deposing a non-party corporate designee. Testimony about communications between Plaintiffs and Apple concerning music licensing, royalties, artificial intelligence initiatives, Suno, or the Massachusetts Litigation can be obtained directly from Plaintiffs. In fact, if relevant to the case, such documents, communications, and agreements would have been produced through party discovery. Likewise, the topic of streaming fraud is something that Suno could ask Plaintiffs about, as is the importance of Plaintiff's music to streaming services. This is not a situation where Apple—as one of the many subpoenaed non-party music services—has unique knowledge of these sweeping issues.

***Third***, the Deposition Subpoena probes into the details of extremely sensitive and competitive commercial information and trade secrets, the sensitivity of which outweighs any marginal relevance to this copyright case. Disclosure of Apple's strategy, financial projections, supplier negotiations, internal policies, and other sensitive information would cause Apple competitive harm and undermine its negotiating positions with the business partners that are parties to this litigation, commitments to non-party music distribution partners, and competitive standing with other services. Given that, Suno has a heightened burden of showing a substantial need for Apple's testimony. It cannot meet its burden of showing that any of this information, which is not even relevant to the claims and defenses, is substantially necessary.

Individually and collectively, these grounds require quashing the Deposition Subpoena under Federal Rules of Civil Procedure 45(d)(3) and 26(b)(2)(C)(i) or, in the alternative, a protective order preventing the deposition.

## II. FACTUAL BACKGROUND

### A. The Massachusetts Litigation

The Massachusetts Litigation was filed in the District of Massachusetts on June 24, 2024 with Judge Dennis Saylor presiding. Plaintiffs allege that Suno infringed their copyrighted sound recordings by "ripping" high-quality audio files from platforms such as YouTube and using the files as training data for Suno's AI model. Amended Compl. ¶ 7. Suno, in turn, has asserted a number of defenses, including

fair use and copyright misuse. Ans. to Amended Compl. With respect to copyright misuse, Suno has asserted that "On information and belief, Plaintiffs have engaged in anticompetitive activities that extend an unlawful monopoly over the production and commercialization of music." *Id.* at 23. Fact discovery in the underlying case for discovery not implicated by Plaintiffs' DMCA claims closed on September 30, 2026, and the deadline for third-party depositions is October 30, 2026. *See UMG Recordings, Inc. v. Suno, Inc.*, No. 24-CV-11611-FDS (D. Mass., Sept. 22, 2026) at Dkt. 284 (Scheduling Order).

**B. Apple's Prior Productions in the Massachusetts Litigation**

Apple is not a party to the Massachusetts Litigation. More than fourteen months ago, Apple was served Plaintiffs' first document subpoena in this matter on May 30, 2025. Means Decl." at ¶ 3.[2] That subpoena included eleven document requests concerning non-party Apple's policies, procedures, commercial agreements, and marketing and creation of AI-generated platform soundtracks ("AIPG Tracks"), as well as Apple's ability to detect AI-generated tracks ("AIPG Tracks") and the prevalence of AIPG Tracks on Apple Music. *See* Ex. 1. After Apple served its Responses and Objections on July 3, 2025, the parties engaged in an extensive ten-month meet-and-confer process. Means Decl. at ¶ 4. During those negotiations, Plaintiffs provided Apple with a list of tracks on Apple Music that they believed were generated by Suno and requested data on those tracks. *Id.* at ¶ 5. To resolve the subpoena and Plaintiffs' expanded request for track-level information, Apple proposed providing (1) track-level data for the tracks Plaintiffs identified (2) a declaration regarding Apple's AI-detection capabilities, and (3) documentary support for the contents of the declaration. *See id.* at ¶ 5, Ex. 3 at 20 (Nov. 19, 2025 email from M. Means), at 13 (Dec. 17, 2025 email from M. Means). Plaintiffs refused and instead issued additional demands on Apple's Transparency Tag program, which launched in March 2026, after Plaintiffs' original subpoena issued. Means Decl. at ¶ 6. Plaintiffs requested data on the implementation and use of the tags, including the volume of tracks tagged and proportion of deliveries receiving tags. *Id.* But this information exceeded the scope of the document subpoena, and Apple refused, reiterating its pending offer to provide

[2] Apple received identical document subpoenas in the parallel litigation against Uncharted Labs, Inc. (d/b/a Udio), but it has not received deposition subpoenas in that matter. Third-party document discovery has closed in the Udio litigation. *UMG Recordings, Inc. v. Uncharted Labs, Inc.*, No. 1:24-cv-04777-AKH (S.D.N.Y., Aug. 24, 2026) at Dkt. 185.

a declaration, document support for the declaration, and data regarding Plaintiffs' spreadsheet of tracks. *Id.* at ¶ 6.

Plaintiffs then served a second document subpoena in the Massachusetts Litigation. *Id.* at ¶ 7; Ex. 2. To resolve both subpoenas, Apple explained it would be producing track-level data for not only the tracks Plaintiffs identified, but for ***all*** tracks that Apple believed were generated by Suno, as well as a declaration and documentary support. Means Decl. at ¶ 8. In doing so, Apple addressed what it understood to be the goal of non-party discovery: clarifying the prevalence of Suno-generated works on the Apple Music service. Apple offered the declaration and related document production as a means of responding to that goal, providing the data expert witnesses would need for their fair use market analysis, and obviating the need for any testimony. *Id.* On May 15, 2026, Apple served a declaration signed by Mr. Bottoms (the "Bottoms Declaration"), along with supporting exhibits. Means Decl. ¶ 9. The Bottoms Declaration and its exhibits provided detailed information on the following subjects:[3]

- Apple's Transparency Tags program, announced March 4, 2026, which enables content providers to label AI-generated content;
- Apple's proprietary AI-Generated Music Detection ("AIPGMD") tool, deployed in March 2026;
- Data on approximately how many AIPG-detected tracks existed on Apple Music as of May 2025;
- Data on approximately how many unique tracks were available on Apple Music globally;
- Data showing approximately how many AIPG-detected tracks on Apple Music were likely generated by Suno, and the percentage of AIPG Track plays attributable to Suno;
- Data on how many AIPG-detected tracks had plays;
- A spreadsheet of tracks that Apple identified as Suno-generated as of March 2026 (APL-UMGSUNO_00000001), including play counts; and
- An Apple newsletter to music label partners introducing Apple's Transparency Tags for AI-generated tracks on Apple Music (APL-UMGSUNO_00000002).

---

[3] Apple does not attach the Bottoms Declaration to this Motion due to its highly confidential designation, reflecting the confidential and competitively sensitive nature of the information within. Instead, Apple refers at a high-level to the content of the Bottoms Declaration such that this motion is publicly accessible. Should the Court find that review of the Bottoms Declaration would be helpful in ruling on this motion, Apple will submit the Bottoms Declaration as a sealed, supplemental exhibit, to be treated as highly confidential, attorneys-eyes only.

Apple also informed Plaintiffs that additional information regarding royalties was forthcoming, with additional time necessary due to the volume and complexity of the request. Means Decl. ¶ 10, Ex. 3 at 1 (May 7, 2026 email from M. Means). Apple later produced a relevant newsletter published on May 20, 2026, titled "What We're Doing to Keep Music Fair" (APL-UMGSUNO_00000003). The Declaration and exhibits were cross-produced to both parties. Means Decl. ¶ 9.

**C. Suno's Document Subpoena**

On June 2, 2026—two weeks ***after*** Apple produced the Bottoms Declaration and related data—Apple heard from Suno for the first time. Means Decl. ¶ 11. Suno served a document subpoena on Apple seeking broad categories of data: (1) documents showing Apple's method of identifying AI-generated tracks on Apple Music; (2) documents showing uploads, streams, and royalties for all Apple Music tracks since 2019 (***including*** non-AIPG Tracks); (3) documents showing how the data provided in APL-UMGSUNO 00000001 was identified; (4) documents showing monthly uploads, streams, and royalties for all AIPG Tracks ***other than*** Suno; and (5) documents showing monthly uploads, streams, and royalties for non-AIPG Tracks. *Id.* ¶ 12. Apple served objections and responses noting, among other things, that several requests sought information ***that Apple had already produced*** in the Bottoms Declaration and accompanying exhibits. *Id.* ¶ 13.

A month later, Suno admitted it had not reviewed the Bottoms Declaration before serving its first subpoena, resulting in redundant requests. *Id.* ¶ 14. When pressed, Suno acknowledged the Bottoms Declaration was "helpful," and promptly narrowed its requests. *Id.* ¶ 14, Ex. 5 at 27 (C. Campbell July 13, 2026 email to M. Means) ("I received and reviewed the Bottoms Declaration, which I agree is helpful context for a few of these points. We're happy to rely on the declaration for most of the topics in Requests 2, 3 and 5"). From the outset, Suno's approach in this litigation has improperly and unreasonably imposed on Apple.

After Suno narrowed its requests in light of the Bottoms Declaration, Apple offered a path to resolution of Suno's questions on July 15, 2026, notwithstanding its objections, namely: (1) a supplemental declaration explaining the meaning of the "confidence_score" field in APL-UMGSUNO_00000001 and clarifying at a high level how the AIPGMD tool works; (2) aggregate United States play data for February 2026 and for July 1, 2025 through March 31, 2026; and (3) United States

royalty information for all Suno- and Udio-identified tracks on Apple Music from July 2024 to July 2026.[4] *Id.* ¶ 15, Ex. 5 at 24-26 (July 15, 2026 email from M. Means). Suno accepted each of these offers but demanded more: aggregated monthly upload, play, and royalty data for every track on Apple Music, not even just Suno tracks. *Id.* ¶ 15, Ex. 5 at 24 (July 15, 2026 email from C. Campbell). Apple objected to the request as disproportionate, unreasonably broad, and invasive of confidential financial information of Apple and its business partners. *Id.* ¶ 15.

**D. Suno's Deposition Subpoenas**

Despite the ongoing conferrals and Apple's offers for a supplemental declaration to provide narrative clarifications to Suno's questions, Suno served the fourth subpoena Apple received in the Massachusetts Litigation. Means Decl. ¶ 16. Suno served a deposition subpoena on July 31, 2026 (the "July Deposition Subpoena"), noticing a September 15, 2026 deposition on nine topics. *Id.*, Ex. 6. On August 20, 2026, Apple served an objection letter explaining why each topic was irrelevant, overbroad, or duplicative, and asked Suno to withdraw the July Deposition Subpoena. *Id.* ¶ 17. In the same correspondence, Apple offered to confer on both the deposition topics and any outstanding document issues. *Id.*, Ex. 5 at 21 (Aug. 20, 2026 email from A. Belusko).

Suno refused, that same day, to withdraw the July Deposition Subpoena. *Id.* at 20-21 (Aug. 20, 2026 email from C. Campbell). Apple nonetheless continued to engage and offered to resolve some of the topics in the July Deposition Subpoena through a supplemental declaration addressing Topic 1, by identifying the source system and business purpose for each column of APL-UMGSUNO_00000001 and defining each of the nine fields Suno identified; Topic 6, by addressing whether the Bottoms Declaration reflects Apple's current policies and producing any updated AI-related policies; and Topics 8 and 9, by addressing Apple's collection efforts and the authenticity of its documents. *Id.* ¶ 19. For the remaining Topics 2, 3, 4, 5, and 7, Apple explained its objections to the irrelevant and disproportionate discovery. *Id.*

In response to Suno's July Deposition Subpoena, Plaintiffs served Apple with their own deposition subpoena on August 17, 2026. *Id.* ¶ 20. Plaintiffs' deposition subpoena mirrored the topics in Suno's

[4] The royalty data on Udio-identified tracks is being produced in the parallel litigation against Udio.

Deposition Subpoena, seeking testimony on topics like Apple's AIPGMD tool, Apple's AI policies, communications with Suno, and streaming fraud. *Id.* ¶ 20. Apple conferred with Plaintiffs and offered to resolve outstanding requests with the supplemental declaration. *Id.* During the conferral, Plaintiffs stated they had not made any streaming fraud argument in the case. *Id.* On October 5, 2026, Plaintiffs responded that they were hopeful to reach an agreement to resolve the deposition subpoena through a supplemental declaration. *Id.*, Ex. 7 at 1 (Oct. 5, 2026 email from M. Rivera). Plaintiffs have stated that, while the supplemental declaration may be acceptable, they are reserving their rights to take a deposition in the event Suno deposes Apple. *Id.* ¶ 20.

On September 25, 2026, Apple went further still. Apple proposed to resolve Suno's entire document subpoena through a supplemental declaration that would discuss the above topics ***and*** (1) define the fields in APL-UMGSUNO_00000001, identify at a high level the systems from which the data was pulled, and explain at a high level how AIPGMD works; (2) provide aggregate monthly upload and play data from January 1, 2022 to the present—more than four years of data, compared with the roughly nine months it had offered in July; and (3) provide United States royalty information for all Suno- and Udio-identified tracks on Apple Music from July 2024 to July 2026. *Id.* ¶ 21, Ex. 5 at 2-4 (Sept. 25, 2026 email from M. Means). Apple also agreed to resolve deposition Topic 3 by addressing how Apple distinguishes AI-generated tracks when calculating royalty payments in its supplemental declaration. *Id.* Apple further offered to answer any specific, reasonable follow-up questions about the declaration. *Id.* Apple declined to provide a witness on the remaining Topics, namely, 2, 4, 5, and 7, which seek irrelevant, disproportionate, and highly confidential business information. *Id.*

On September 29, Suno agreed that Apple's supplemental declaration would fully resolve the document subpoena and resolve the Deposition Subpoena with respect to five of the nine deposition Topics: Topics 1, 3, 6, 8, and 9. *Id.* ¶ 22. Yet Suno still would not drop or reasonably narrow the remaining topics and, despite the productive conferrals Apple was having with Suno to try to resolve the dispute, Suno decided the parties were at an impasse. The next day, on September 30, 2026, Suno served the Deposition Subpoena, identical to the original except for the date. *Id.* ¶ 23, Ex. 8. Apple conferred with Suno's counsel regarding the Subpoena on October 8, 2026, and received confirmation that, despite Suno's broader notice, it was demanding live testimony on Topics 2, 4, 5, and 7 as modified during its

conferrals with Apple. *Id.* ¶ 24. On October 13th, 2026, Apple served a supplemental declaration (the "Supplemental Bottoms Declaration") as promised.[5]

Accordingly, following the parties' conferrals, Apple understands that only four modified depositions topics (the "Disputed Topics") are at issue:

- **Topic 2:** Current or ongoing negotiations with the Plaintiffs regarding music licensing, royalties, and artificial intelligence initiatives.
- **Topic 4:** The ability to operate and long-term commercial viability of Apple Music and service offerings without the catalog of one or more Plaintiffs, including but not limited to any studies, analyses, projections, discussions, or communications regarding the potential or actual effect on Apple Music or service offerings' revenues, user base, user engagement, or competitive position that would result, or has resulted, from going dark, taking down, or otherwise losing access to all or a material portion of one or more Plaintiffs' catalogs, or any large catalog of sound recordings licensed by Apple.
- **Topic No. 5**: the types and frequency of Streaming Fraud on Apple Music, how Streaming Fraud is typically discovered by Apple, Apple's understanding of the typical causes of Streaming Fraud, and Apple's standard policies when responding to an incident of Streaming Fraud.
- **Topic No. 7:** communications with Plaintiffs regarding Suno or this case, with the understanding that Agents of the Plaintiffs (e.g., the RIAA) are in scope.

## ARGUMENT

## III. THE DEPOSITION SUBPOENA SHOULD BE QUASHED

### A. Legal Standard

Federal Rule of Civil Procedure 45 governs non-party discovery. The scope of discovery under Rule 45 is the same as the scope of discovery permitted under Rule 26(b), which provides that the court must limit discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). "'While discovery is a valuable right and should not be unnecessarily restricted . . . the 'necessary' restriction may be broader when a nonparty is the target of discovery.'" *Waymo LLC v. Uber Techs., Inc.*, No. 17-cv-00939, 2017 WL 2929439, at *3 (N.D. Cal. July 7, 2017), *mot. for relief from judgment denied*, 2017 WL 6883928 (N.D. Cal. Aug. 8, 2017) (quoting *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d

[5] Similarly, Apple does not attach the Supplemental Bottoms Declaration to this Motion due to its highly confidential designation, reflecting the confidential and competitively sensitive nature of the information within. If the Court finds that review of the Supplemental Bottoms Declaration would be helpful in ruling on this motion, Apple will submit the Bottoms Declaration as a sealed, supplemental exhibit, to be treated as highly confidential, attorneys-eyes only.

646, 649 (9th Cir. 1980)). Where a non-party is the target of discovery, this scope is construed narrowly to "protect third parties from harassment, inconvenience, or disclosure of confidential [information]." *In re Subpoena to Apple Inc.*, No. 5:13-cv-254, 2014 WL 2798863, at *2 (N.D. Cal. June 19, 2014).

Under Rule 45, a party issuing a subpoena "***must*** take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and a court must quash a subpoena when it subjects a person to an "undue burden." Fed. R. Civ. P. 45(d)(1), (3)(A)(iv) (emphasis added). Courts weigh factors such as relevance, disproportionality, the need of the party for the documents or testimony, and the burden imposed. *See Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005); *Last v. M-I*, Misc. 22-20, 2022 WL 3012206, at *3 (C.D. Cal. May 19, 2022) (granting motion to quash deposition that sought information "disproportionate to the basic issues" in the case). "Concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs in a Rule 45 inquiry." *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409 (C.D. Cal. 2014) (internal quotations and citations omitted); *see also Intermarine, LLC v. Spliethoff Bevrachtingskantoor, B.V.*, 123 F. Supp. 3d 1215, 1218-19 (N.D. Cal. 2015) ("the Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts") (citations omitted).

A court may also quash a subpoena if it "requires . . . disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i). "Once the nonparty shows that the requested information is a trade secret or confidential commercial information, the burden shifts to the requesting party to show a 'substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated.'" *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 684 (N.D. Cal. 2006) (quoting Fed. R. Civ. P. R. 45(d)(3)(C)).

Here, the Disputed Topics are improper and the Deposition Subpoena should be quashed because it (1) seeks testimony that is irrelevant to the copyright infringement claims or fair use and copyright misuse defenses at issue in the Massachusetts Litigation; (2) seeks testimony on information that may be obtained through less onerous means, namely, from party discovery; and (3) requires Apple to disclose

highly confidential information without the requisite showing of substantial need. Accordingly, Apple respectfully requests that the Court quash the Deposition Subpoena and issue a protective order.

### B. The Deposition Subpoena Should be Quashed Because it Seeks Irrelevant Information

"The party issuing the subpoena ***must*** demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Williams v. Cty. of San Diego*, No. 17-cv-815, 2019 WL 5963969, at *4 (S.D. Cal. Nov. 13, 2019) (citation omitted) (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) (discovery must be "relevant" to a "party's claim or defense."). And "if the sought-after [information is] not relevant . . . then *any burden whatsoever* imposed . . . would be by definition 'undue.'" *Williams*, 2019 WL 5963969 at *3 (emphasis and modification in original). Accordingly, courts routinely reject discovery requests that "bear no indication of any nexus to the disputes" in the case. *Gilead Scis., Inc. v. Merck & Co, Inc.*, No. 5:13-cv-4057, 2016 WL 146574, at *2 (N.D. Cal. Jan. 13, 2016). As detailed below, Suno cannot demonstrate that the information it seeks is relevant to the Massachusetts Litigation. The Deposition Subpoena can be quashed on this basis alone.

***First***, Topic 2 seeks testimony about Apple's current or ongoing negotiations with Plaintiffs regarding music licensing, royalties, and artificial intelligence initiatives. Means Decl. ¶ 24. Apple's music licensing and royalty negotiations long predate Suno's existence in 2021. These negotiations are complex and involve a host of considerations among Apple and the Plaintiffs. None of those are relevant to the Massachusetts Litigation, which centers on whether Suno copied Plaintiffs' copyrighted works and whether its conduct is excused by a viable fair use defense. Suno puts forward two theories of why this information is relevant, neither of which is persuasive. As an initial matter, Suno theorizes that ***if*** AI-generated content is excluded from the royalty-pool, that could bear on market harm because it means that AI-generated music is not taking a chunk of royalty payments from Plaintiffs. *Id.* ¶ 25. This argument does not make sense. Apple does not currently exclude AI-generated content from its royalty pool. Apple ***produced*** documents sufficient to show royalty data for millions of Suno-generated tracks, so Suno can see what is being paid for these tracks. Further, Suno has not identified a particular provision or negotiation with Plaintiffs excluding Suno tracks from the royalty pool. The purported relevance hinges on speculation. Similarly, Suno contends that AI restrictions or anti-steering provisions bear on copyright

misuse if Plaintiffs are using their copyrights to extract anticompetitive restrictions on AI-generated content from Apple. *See id.* ¶ 25. But Suno has never identified any specific contractual provision at issue or explained why ***Apple*'s** view of these negotiations is relevant. Indeed, Apple provided a detailed declaration describing its policies concerning AI-generated works on Apple Music, none of which support Suno's theory.

***Second***, Topic 4 seeks testimony on Apple Music's "commercial viability," operations, and competitive position without Plaintiffs' catalogs, including "any studies, analyses, projections, discussions, or communications" about the effect of losing those catalogs. *Id.* ¶ 24. Even setting aside the vagueness of the term "commercial viability," this highly speculative topic has ***no*** relevance to the case, including to Suno's copyright misuse theory. This is a fishing expedition by a new entrant to the music industry to gain insight into Apple's business operations. Suno argues that Apple's assessment of whether Apple Music could survive without Plaintiffs' catalogs shows whether Apple views those catalogs as vital, thus demonstrating the influence Plaintiffs exert over Apple such that Plaintiffs could improperly leverage their copyrights to suppress Suno's AI content on Apple Music. *Id.*, Ex. 5 at 4-5, 9-12 (Sept. 9 and Sept. 23, 2026 emails from C. Campbell). But Suno's tenuous theory ignores that copyright misuse turns on ***Plaintiffs'*** conduct—whether Plaintiffs used their copyrights to control areas outside copyright's limited monopoly. *See Prac. Mgmt. Info. Corp. v. Am. Med. Ass'n*, 121 F.3d 516, 521 (9th Cir. 1997), *amended*, 133 F.3d 1140 (9th Cir. 1998) ("What offends the copyright misuse doctrine" is "the limitation imposed by the [copyright holder] licensing agreement"). ***Apple's*** internal assessments of the value of Plaintiffs' catalogs have no bearing on whether or how Plaintiffs improperly leveraged their copyrights.

***Third***, Topic 5 seeks testimony on the types and frequency of streaming fraud on Apple Music, how Apple detects it, Apple's understanding of its causes, and Apple's policies for responding to it. Means Decl. ¶ 24, Ex. 8 at 5 (Deposition Subpoena). Suno's theory is that Plaintiffs justify suppressing AI content on streaming services by invoking streaming fraud, and that DSPs like Apple Music are the only parties to confirm whether streaming fraud correlates with AI content. *Id.* ¶ 25, Ex. 5 at 9-12 (Sept. 9, 2026 email from C. Campbell). But Suno cannot identify a single statement Plaintiffs have made ***in this litigation*** advancing a streaming-fraud theory. *See id.*, Ex. 5 at 3 (Sept. 25, 2026 email from M. Means). In fact, Plaintiffs were unaware of such an argument and expressed confusion and surprise when Apple

raised it in a conferral with them. *See id.* ¶ 20. Suno's only claim for relevance is a vague public statement by a UMG executive during an earnings call regarding streaming fraud. *See id.*, Ex. 5 at 11 (C. Campbell September 9, 2026 email). A statement in an earnings call does not mean that the topic is an argument in the litigation. Suno is therefore demanding non-party testimony to rebut an argument that no party has made. And again, Suno has not even identified what restrictions it is claiming Apple took related to AI based on Plaintiffs' supposed concerns about streaming fraud. Apple has produced extensive documentation and information about its AI policies, and its declarations and exhibits address the public statements that clarify Apple's approach to stream manipulation. Suno has not explained what specific action it is saying was a result of pressure from Plaintiffs nor how those statements are insufficient to rebut allegations of "suppression."

***Finally***, Topic 7 seeks testimony on Apple's communications with Plaintiffs, or their agents such as the RIAA, regarding Suno or this case. *Id.* ¶ 24, Ex. 8 at 5 (Deposition Subpoena). This topic is plainly overbroad and would also sweep in even a passing comment about Suno's existence. Apple's awareness of Suno or its thoughts about Suno are not relevant to the claims or defense in the Massachusetts Litigation. Tellingly, while Suno has generally claimed that these topics are "relevant, necessary, and appropriate," it has never explained *how* these communications bear on any claim or defense in the Massachusetts Litigation. *See id.*, Ex. 5 at 1-2 (Sep. 29, 2026 email from C. Campbell). To the extent any are relevant, Apple would expect they were produced by Plaintiffs in the Litigation. Suno has not identified any specific documents on which it wants a witness prepared. A bare assertion of relevance does not satisfy Suno's burden. *See Williams*, 2019 WL 5963969 at *4.

Because the Disputed Topics are irrelevant to the claims or defenses in the Massachusetts Litigation, the Deposition Subpoena should be quashed. *See Cacique, Inc. v. Robert Reiser & Co.*, 169 F.3d 619, 622 (9th Cir. 1999) ("Enforcing a discovery request for *irrelevant* information is a per se abuse of discretion." (emphasis in original)).

### C. The Deposition Subpoena Should be Quashed Because it Seeks Information that is Equally Obtainable from Party Discovery

Even if Suno could show that the information sought in the Deposition Subpoena has some relevance to its claims in the Massachusetts Litigation (it cannot), the Deposition Subpoena should be quashed because it seeks information that is equally available from party discovery.

Courts in the Ninth Circuit frequently quash deposition subpoenas where the testimony sought is available from a party to the litigation. *See*, *e.g.*, *Intermarine*, 123 F. Supp. 3d at 1218 (quashing deposition subpoena to non-party because the party defendant was "the best witness" to testify about the files at issue); *Soto v. Castlerock Farming & Transp., Inc.*, 282 F.R.D. 492, 505 (E.D. Cal. 2012) ("[T]here is a preference for parties to obtain discovery from one another before burdening non-parties with discovery requests."); *Elec. Scripting Prods., Inc. v. HTC Am., Inc.*, 17-cv-5806, 2021 WL 3773607, at *5 (N.D. Cal. Aug. 25, 2021) (quashing non-party subpoena where, *inter alia*, the information sought was irrelevant or should have been more properly sought from a party); *Personal Audio LLC v. Togi Entm't., Inc.*, No. 14-mc-80025, 2014 WL 1318921, at *2-3 (N.D. Cal. Mar. 31, 2014) (stating "there is no reason to burden [a] non-party [] when the information sought should be in the possession of the party defendants."). Rule 26 likewise requires the Court to limit discovery that "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Here, three of the Disputed Topics concern information that is equally available through the Parties.

Two of the four Disputed Topics concern ***Plaintiffs'*** conduct, communications, or negotiations with Apple—matters on which Plaintiffs, not Apple, are the best witnesses. Topic 2, for example, seeks testimony regarding current or ongoing negotiations between Apple and Plaintiffs regarding music licensing, royalties, and artificial intelligence initiatives, and Topic 7 seeks Apple's communications with Plaintiffs or their agents regarding Suno or this case. Means Decl. ¶ 24, Ex. 8 at 4-5 (Deposition Subpoena). By definition, Plaintiffs sit on the other side of ***every*** negotiation and ***every*** communication within these topics. Suno had the opportunity to seek documents and testimony from Plaintiffs on these subjects, and non-party Apple should not be required to designate one or more of its senior managers to sit for a duplicative deposition when the same information is available from Plaintiffs. *Price v. Peerson*, CV 13-3390, 2014 WL 12687411, at *1 (C.D. Cal. Apr. 8, 2014) ("There is no justification for submitting

[subpoenaed parties] who have less or no information about the incident in issue to be subjected to a deposition"); *In re Subpoena to Produce Documents of Clapp, Moroney, Bellagamba, Vucinich, Beeman & Scheley*, No. 14-mc-80191, 2014 WL 3784112, at *4 (N.D. Cal. July 31, 2014) (quashing subpoena requesting information from a non-party regarding its "knowledge" because that information was available through a party ).

Finally, Topic 4 seeks Apple's internal assessments of Apple Music's "commercial viability" without Plaintiffs' catalogs, purportedly to show how much leverage Plaintiffs hold over digital service providers like Apple. Means Decl. ¶ 24. Having a deposition to ask an Apple employee to speculate about what the world would look like without Plaintiffs' music on Apple Music is not only irrelevant, the core information Suno is seeking is with Plaintiffs. If Plaintiffs used their catalogs anticompetitively, evidence of that conduct—the terms Plaintiffs allegedly demanded or threats made—is with Plaintiffs. Similarly, Topic 5 concerns streaming fraud, purportedly because Plaintiffs are asserting that there is a connection between streaming fraud and AI-generated music. In particular, Suno is contending that Plaintiffs are making that assertion in response to Suno's copyright misuse defense, to explain why Plaintiffs negotiated certain commercial provisions on AI music. Plaintiffs' reason for demanding certain contractual provisions or their concern about streaming fraud is information that they would have. Suno should therefore seek the requested information from Plaintiffs, a source that is "more convenient, less burdensome, [and] less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

**D. The Deposition Subpoena Should be Quashed Because it Seeks Highly Confidential Information**

Here, the information sought is highly confidential and commercially sensitive. As explained in the accompanying client declaration of Sam Bottoms (Bottoms MTQ Decl.), Apple's negotiation of licenses, royalties, and matters related to artificial intelligence are highly commercially sensitive. Bottoms MTQ Decl. ¶ 4. Likewise, Apple's internal policies on how it handles streaming fraud and its commercial assessments of the viability of Apple Music are extremely competitively sensitive and would cause Apple competitive harm if exposed to the public. *Id.* ¶¶ 5-6. If the "how" behind Apple's detection and security methods regarding streaming fraud were to be become public, malicious actors would plot ways to bypass Apple's security measures. *Id.* ¶ 5.

The posture and players in the underlying case make disclosure of Apple's highly commercial and competitively sensitive information ***especially*** harmful. This is far from a typical two-party dispute. Plaintiffs and Defendant have dragged in the entire music industry by issuing subpoenas to Apple's DSP competitors (such as Spotify, Amazon, and Pandora) and unrelated industry bodies like the Mechanical Licensing Collective.[6] *Id.* ¶ 2. Apple's negotiation of licensing, royalties, and AI strategy would therefore be at risk of production in a case populated by Apple's licensing counterparties and competitors, which multiplies the risk of misuse or accidental disclosure, even under a Protective Order. *See Philhower v. Philhower*, 8:24-cv-74, 2024 WL 4720932, at *6 (C.D. Cal. Oct. 15, 2024) (quashing subpoenas and noting that a Protective Order "itself, is not a guarantee that private information produc[ed] under the Protective Order will be safeguarded from disclosure.").

If Suno has not even shown the relevance of the Disputed Topics, it cannot meet its higher burden of demonstrating a "substantial need" for the testimony. *See Gonzales*, 234 F.R.D. at 684; *see SPS Techs., LLC v. Briles Aerospace, Inc.*, CV 18-9536, 2019 WL 13108018, at *1-2 (C.D. Cal. June 24, 2019) (movant did not meet its burden to demonstrate a substantial need for commercially sensitive information where it could not explain how the requested third-party discovery was not "duplicative or superfluous" to other evidence in the case). Suno's efforts to obtain highly commercially sensitive information that is irrelevant and non-essential to the Massachusetts Litigation should be rejected.

## IV. IN THE ALTERNATIVE, THE COURT SHOULD ISSUE A PROTECTIVE ORDER

Under Rule 26(c)(1) of the Federal Rules of Civil Procedure, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including forbidding a deposition, or limiting its scope. *See Elec. Scripting Prods.*, 2021 WL 3773607 at *5 (quashing non-party subpoena and granting motion for protective order where information sought was either irrelevant to the action or should have been sought from a party). As detailed above, Apple has gone above and beyond producing information responsive to the relevant subpoena topics raised by Suno and Plaintiffs. But Apple has met the standard for a protective order because the information sought in the Disputed Topics are irrelevant, equally available through party discovery, and constitutes

[6] *See, e.g., Uncharted Labs, Inc. v. Mech. Licensing Collective*, No. 3:26-mc-00020, (M.D. Tenn.) at Dkt. 1.

highly confidential information for which Suno has not demonstrated a substantial need. *See United States v. Capriotti*, No. 1:11-cv-847, 2012 WL 2994244, at *2 (E.D. Cal. July 20, 2012) (finding "good cause" for a protective order when "the proposed subject matter of the depositions is irrelevant to [the] proceeding"); *Fausto v. Credigy Servs. Corp.*, C 07-5658, 2008 WL 4793467, at *2 (N.D. Cal. Nov. 3, 2008), *objections overruled*, 2008 WL 5158915 (N.D. Cal. Dec. 9, 2008) (granting motion to quash and motion for protective order where requesting party had a "lack of any showing of need [] for the requested testimony.").

## V. CONCLUSION

As explained above, Apple has already provided substantial information tailored to the reasonable scope of third-party discovery. Suno has no genuine need to obtain the additional information sought in the Disputed Topics (Topics 2, 4, 5, and 7) of the Deposition Subpoena, nor is witness testimony necessary or proper in light of the information Apple has already provided. For the reasons discussed above, Apple respectfully requests that the Court grant its motion to quash and issue a protective order to prevent Suno from seeking irrelevant, confidential, and duplicative discovery from non-party Apple.

DATED: October 13, 2026

Respectfully submitted,
WALKER STEVENS CANNOM LLP

By: */s/ Bethany M. Stevens*

Hannah L. Cannom (SBN 245635)
hcannom@wscllp.com
Bethany M. Stevens (SBN 245672)
bstevens@wscllp.com
500 Molino Street #118
Los Angeles, CA 90013
Telephone: (213) 337-9972
Facsimile: (213) 403-4906

*Attorneys for Non-Party Apple, Inc.*