WALKER STEVENS CANNOM LLP
Hannah L. Cannom (SBN 245635)
hcannom@wscllp.com
Bethany M. Stevens (SBN 245672)
bstevens@wscllp.com
500 Molino Street #118
Los Angeles, CA 90013
Telephone: (213) 337-9972
Facsimile: (213) 403-4906

*Attorneys for Non-Party Apple Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN THE MATTER OF A DEPOSITION SUBPOENA SERVED IN:<br><br>UMG RECORDINGS, INC., CAPITOL RECORDS, LLC, and SONY MUSIC ENTERTAINMENT,<br><br>Plaintiffs,<br><br>v.<br><br>SUNO, INC., and JOHN DOES 1-10,<br><br>Defendants. | CASE NO. 5:26-MC-80303-VKD<br><br>[RELATED TO CASE NO. 1:24-CV-11611 PENDING IN THE DISTRICT OF MASSACHUSETTS]<br><br>**NON-PARTY APPLE INC.'S REPLY IN SUPPORT OF ITS NOTICE OF MOTION AND MOTION TO QUASH DEPOSITION SUBPOENA OR, IN THE ALTERNATIVE, MOTION FOR PROTECTIVE ORDER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: December 1, 2026<br>Time: 10:00 a.m.<br>Courtroom: 2 |

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. FACTUAL BACKGROUND .......... 3

III. ARGUMENT .......... 4

A. The Disputed Topics Are Irrelevant .......... 4

1. Apple's Ongoing Contract Negotiations with Plaintiffs Are Irrelevant .......... 4

2. Apple's Assessment of the Commercial Viability of Apple Music Without Plaintiffs' Content Is Irrelevant .......... 7

3. Apple's Identification, Understanding, and Policies Regarding Streaming Fraud Generally Are Irrelevant .......... 8

4. Apple's Communications with Plaintiffs Regarding Suno Are Irrelevant .......... 9

B. The Disputed Topics Seek Information Available Through Plaintiffs .......... 10

C. Suno Cannot Meet Its Burden to Demonstrate Substantial Need for Apple's Highly Commercially Sensitive Information .......... 12

D. Apple Has Demonstrated Suno's Subpoena Causes Undue Burden .......... 14

IV. IN THE ALTERNATIVE, A PROTECTIVE ORDER IS APPROPRIATE .......... 15

V. TRANSFER .......... 15

VI. CONCLUSION .......... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Akkawi v. Sadr*,
No. 20 Civ. 1034, 2022 WL 17722605 (E.D. Cal. Dec. 15, 2022)....................14

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
300 F.R.D. 406 (C.D. Cal. 2014)....................10, 14

*Covetrus, Inc. v. Actian Corp.*,
No. 2:21 Civ. 97, 2024 WL 4581285 (D. Me. Oct. 25, 2024)....................7, 8

*Elec. Scripting Prods., Inc. v. HTC Am., Inc.*,
No. 17 Civ. 5806, 2021 WL 3773607 (N.D. Cal. Aug. 25, 2021)....................10

*Fausto v. Credigy Servs. Corp.*,
No. 07 Civ. 5658, 2008 WL 4793467 (N.D. Cal. Nov. 3, 2008)....................15

*Gonzales v. Google, Inc.*,
234 F.R.D. 674 (N.D. Cal. 2006)....................12

*In Re: the Subpoena to Produce Documents of Clapp, Moroney, Bellagamba, Vucinich, Beeman & Scheley*,
No. 14 MC 80191, 2014 WL 3784112 (N.D. Cal. July 31, 2014)....................10

*Lasercomb America, Inc. v. Reynolds*,
911 F.2d 970 (4th Cir. 1990)....................7, 8

*Moon v. SCP Pool Corp.*,
232 F.R.D. 633 (C.D. Cal. 2005)....................14

*Personal Audio LLC v. Togi Entertainment, Inc.*,
No. 14-mc-80025 RS (NC), 2014 WL 1318921 (N.D. Cal. Mar. 31, 2014)....................10

*Philhower v. Philhower*,
No. 24 Civ. 74, 2024 WL 4720932 (C.D. Cal. Oct. 15, 2024)....................13

*Practice Management Information Corp. v. American Medical Association*,
121 F.3d 516 (9th Cir. 1997)....................8

*Price v. Peerson*,
No. 13 Civ. 03390, 2014 WL 12687411 (C.D. Cal. Apr. 8, 2014)....................10

*In re Rule 45 Subpoenas Issued to Google LLC & LinkedIn Corp. Dated July 23, 2020*,
337 F.R.D. 639 (N.D. Cal. 2020)....................4

*Soto v. Castlerock Farming & Transport, Inc.*,
282 F.R.D. 492 (E.D. Cal. 2012) .......... 10

*In re Subpoena to Lightspeed Venture Partners*,
No. 3:26-mc-80289 (N.D. Cal.) .......... 1

*Suno, Inc. v. Mechanical Licensing Collective*,
No. 3:26-mc-00021 (M.D. Tenn.) .......... 1

*Trigueros v. Adams*,
658 F.3d 983 (9th Cir. 2011) .......... 1

*Udio v. Mechanical Licensing Collective*,
No. 3:26-mc-00020 (M.D. Tenn.) .......... 1

*UMG Recordings, Inc. v. Suno, Inc.*,
No. 24 Civ. 11611 (D. Mass.) .......... 1, 2

*UMG Recordings, Inc. v. Kid Distro Holdings, LLC,*
No. 1:26-mc-510 (S.D.N.Y.) .......... 1

*United States v. Capriotti*,
No. 11 Civ. 847, 2012 WL 2994244 (E.D. Cal. July 20, 2012) .......... 15

*Waymo LLC v. Uber Techs., Inc.*,
No. 17 Civ. 939, 2017 WL 3581171 (N.D. Cal. Aug. 18, 2017) .......... 14

*Williams v. Cnty. of San Diego*,
No. 17 Civ. 815, 2019 WL 5963969 (S.D. Cal. Nov. 13, 2019) .......... 4, 9, 14

**Rules**

Fed. R. Civ. P. 26 .......... *passim*

Fed. R. Civ. P. 45 .......... 2, 15

## I. INTRODUCTION

In the underlying litigation, the District of Massachusetts denied additional discovery concerning ongoing and post-complaint licensing agreements, warning of the need for a "***containment barrier around the oil spill that is discovery in this case***." *UMG Recordings, Inc. v. Suno, Inc.*, No. 24 Civ. 11611, Dkt. 201 at 11:6–7 (emphasis added). Suno does not address the fact that the underlying court denied the type of discovery it is seeking from Apple. The court noted that Suno's copyright misuse theory "has not been adopted in this Circuit" and is "vanishingly unlikely to be made out in this case." *Id.* at 11:11–12. As a result, the court concluded that "the likelihood that that's a promising area that would make continued discovery in this area proportional to the needs of the case is low" and denied discovery into Plaintiffs' ongoing license agreements. *Id.* at 11:16–20.

The containment barrier erected by the underlying court during party discovery should apply here too, where Suno now seeks to spread the oil spill to non-parties. Apple is one of many non-parties, including Amazon, Pandora, SoundCloud, Spotify, Tidal, Deezer, YouTube, and the Mechanical Licensing Collective, from whom Suno is seeking overbroad discovery. And the Northern District of California is one of many federal district courts hearing third-party discovery disputes related to this litigation. *See, e.g.*, *UMG Recordings, Inc. v. Kid Distro Holdings, LLC,* No. 1:26-mc-510 (S.D.N.Y.), Dkt. 2 (seeking content provider's data on AI-generated tracks); Dkt. 13 (negotiating a compromise); *Suno, Inc. v. Mechanical Licensing Collective*, No. 3:26-mc-00021 (M.D. Tenn.), Dkt. 22 (opposing motion to compel seeking data across all digital service providers ("DSPs")); *Udio v. Mechanical Licensing Collective*, No. 3:26-mc-00020 (M.D. Tenn.), Dkt. 14 (opposing motion to compel monthly streaming usage reports from various DSPs); *In re Subpoena to Lightspeed Venture Partners*, No. 3:26-mc-80289 (N.D. Cal.), Dkt. 1 (moving to quash subpoena seeking testimony from Suno's investor).[1] Apple has not "stonewalled" Suno, *see* Dkt. 12 ("Opp.") at 10; rather, Apple has engaged with both parties and produced substantial discovery relevant and proportional to the core issues in the litigation. For more than a year, Apple met and conferred to respond to subpoenas from both Plaintiffs and Suno, involving

---

[1] Apple requests that the Court take judicial notice of the above third-party discovery disputes related to this litigation. Courts in the Ninth Circuit "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011).

more than 90 emails and more than 10 verbal conferrals. *See* Dkt. 1-1 ("Means Decl."); Dkt. 1-5; Dkt. 1-7. Apple has produced granular and aggregate data on millions of Apple Music tracks, as well as two sworn declarations from Sam Bottoms, Apple's Senior Director of Services Operations, which included exhibits addressing Apple's AI detection technology, its Transparency Tags program, the prevalence of Suno-generated content, royalties paid for Suno-generated tracks, and its streaming-fraud policies. *See* Means Decl. ¶¶ 8–9; Dkt. 1 ("Mot.") at 1. Apple already has provided Suno and Plaintiffs with substantial discovery; indeed, other non-parties are actively disputing providing the type of information Apple already has produced as "duplicative." *See Udio v. Mechanical Licensing Collective*, Dkt. 14 at 8.

But Suno demands more. Despite being denied discovery on its copyright misuse theory by the District of Massachusetts, Suno seeks similar discovery from non-party Apple. It asks that this Court allow it to take a deposition of Apple regarding ongoing negotiations with Plaintiffs, a topic on which the District of Massachusetts explicitly denied discovery because of the low likelihood that relevant information would be gleaned. *See UMG*, No. 24 Civ. 11611, Dkt. 201 at 11. And Suno seeks to depose Apple on even more attenuated topics, including the "commercial viability" of Apple Music, Apple's internal approach to streaming fraud, and communications with Plaintiffs or their agents about Suno or this case (collectively, the "Disputed Topics"). After more than a year of cooperation, Apple respectfully suggests that the time has come to set a limit on the reasonable scope of third-party discovery here.

Suno's deposition subpoena (the "Deposition Subpoena") should be quashed for three independent reasons. ***First***, the Disputed Topics are irrelevant. Each depends on Suno's copyright misuse theory, which turns on ***Plaintiffs'*** conduct—not Apple's—and which the District of Massachusetts already has found too attenuated to justify discovery. ***Second***, even if the Disputed Topics had some marginal relevance, the information Suno seeks is available from Plaintiffs, who are parties to the underlying litigation (the "Massachusetts Litigation") and possess the information that the Disputed Topics reach. ***Third***, the Disputed Topics call for Apple's most commercially sensitive information—its ongoing, unexecuted negotiations with its licensors, internal assessments of Apple Music's "commercial viability" (to the extent any exist), and its streaming-fraud detection methods—and Suno has not shown the substantial need required to compel such testimony. Apple respectfully requests that the Court quash the Deposition Subpoena under Federal Rules of Civil Procedure 45(d)(3) and 26(b)(2)(C)(i) or, in the

alternative, issue a protective order barring the deposition.

## II. FACTUAL BACKGROUND

For more than a year, Apple has responded to subpoenas served by both Plaintiffs and Suno—six in total—exchanging more than 90 emails and participating in more than 10 conferrals to reach a reasonable scope of non-party discovery. *See* Dkt. 1-4; Dkt. 1-6. Throughout, Apple's consistent position was to cooperate with the parties on discovery requests that reasonably related to the prevalence and market effect of Suno-generated works on Apple Music. *See* Means Decl. ¶ 8. Apple took the extra step of providing sworn declarations to contextualize and authenticate the data and documents produced, obviating the need for a deposition on those topics. *See id.* ¶ 9. While Suno served three of those subpoenas, the total demonstrates the cumulative demand on Apple: more than a year of compliance efforts, repeated conferrals, and productions on which both sides may rely. *See id.* ¶¶ 2–21.

Suno asserts that Apple "flatly refused to provide any testimony, no matter what narrowing Suno proposed." Opp. at 9. That is inaccurate. Upon receiving the July 31, 2026, deposition subpoena, Apple objected to each topic, explained why, and offered to confer. Means Decl. ¶¶ 16–17. But Apple reasonably objected in surprise at receiving a deposition subpoena while actively conferring with both Suno and Plaintiffs on the scope of a supplemental declaration to accompany Suno-related royalty data. Apple offered to resolve Topics 1, 6, 8, and 9 through that supplemental declaration, *id.* ¶ 19, and on September 25 extended that offer to Topic 3 and offered to answer any reasonable follow-up questions. *Id.* ¶ 21. On September 29, Suno agreed that the declaration would resolve five of the nine deposition topics. *Id.* ¶ 22. Yet despite these productive conferrals, it was ***Suno—not Apple***—that declared, "Regarding Deposition Topics 2, 4 and 5, we have reached an impasse." Dkt. 1-6 at 1. The next day, Suno re-served a Deposition Subpoena identical to the original except for the date. Means Decl. ¶ 23. Apple nonetheless served, as promised, the October 13, 2026, Supplemental Declaration of Sam Bottoms ("Supplemental Bottoms Declaration"), which contained extensive additional data. Mot. at 9.

For the avoidance of doubt, Apple has thus far produced:

- Track-level data for all tracks Apple identified as Suno-generated, Means Decl. ¶ 9;
- The May 15, 2026, Bottoms Declaration and supporting exhibits addressing Apple's AI detection technology, its Transparency Tags program, and the prevalence of Suno-generated content on Apple Music, *id.*;

- Aggregate monthly upload and play data from January 1, 2022, to the present, and United States royalty information for all Suno- and Udio-identified tracks on Apple Music from July 2024 to July 2026, *see id.* ¶ 21; Mot. at 9; and
- The Supplemental Bottoms Declaration, which defines the fields in Apple's data production, explains at a high level how Apple's AI-detection tool works, and addresses that Apple does not distinguish AI-generated tracks when calculating royalty payments.[2]

Suno accepted the Supplemental Bottoms Declaration as fully resolving its document subpoena and five of the nine deposition topics (Topics 1, 3, 6, 8, and 9). Means Decl. ¶ 22; Opp. at 10. Apple also offered to answer any reasonable follow-up questions about the declaration. Means Decl. ¶ 21.

## III. ARGUMENT

### A. The Disputed Topics Are Irrelevant

It is true that, as the moving party, Apple "bears the burden of persuasion on a motion to quash," but it is also true that "the party issuing the subpoena must demonstrate that the discovery is relevant." *In re Rule 45 Subpoenas Issued to Google LLC & LinkedIn Corp. Dated July 23, 2020*, 337 F.R.D. 639, 645 (N.D. Cal. 2020). Accordingly, Suno must show that the testimony it seeks "is relevant and material to the allegations and claims at issue in the proceedings." *Williams v. Cnty. of San Diego*, No. 17 Civ. 815, 2019 WL 5963969, at *4 (S.D. Cal. Nov. 13, 2019) (citation omitted); Opp. at 11 (admitting "Suno must demonstrate that the information sought is relevant to the allegations and claims at issue."). And "if the sought-after [information is] not relevant . . . then *any burden whatsoever* imposed . . . would be by definition 'undue.'" *Williams*, 2019 WL 5963969, at *3 (emphasis and modification in original). Suno cannot demonstrate that the Disputed Topics seek information relevant to the Massachusetts Litigation.

#### 1. Apple's Ongoing Contract Negotiations with Plaintiffs Are Irrelevant

Suno contends that Apple's ongoing contract negotiations with Plaintiffs are relevant. They are not. ***First***, Suno claims that these negotiations bear on copyright misuse because they would show that Plaintiffs are using their copyrights to restrict AI content on Apple Music. Opp. at 14. But Magistrate Judge Levenson already rejected that argument in the Massachusetts Litigation, a development that Suno

[2] Apple does not attach the Supplemental Bottoms Declaration to this Reply due to its highly confidential designation, reflecting the confidential and competitively sensitive nature of the information it contains. If the Court finds that review of the Supplemental Bottoms Declaration would be helpful in ruling on this motion, Apple proposes to submit the Supplemental Bottoms Declaration as a sealed, supplemental exhibit or to provide it to the Court *in camera*, to be treated as highly confidential, attorneys' eyes only.

failed to address in its Opposition. At a March 2026 status conference, he heard Suno's request that Plaintiffs produce discovery regarding unexecuted, ongoing license agreements because they were relevant to copyright misuse—***the same argument Suno makes here***. No. 24 Civ. 11611, Dkt. 201 at 10. Magistrate Judge Levenson denied that request, explaining:

> "[T]he need to keep some kind of containment barrier around the oil spill that is discovery in this case[,] that to a significant degree ***discovery into future deals and ongoing deals and post complaint deals is a long way from the home turf of this case*** and turns, in meaningful part, on the ***copyright abuse theory, which has not been adopted in this Circuit*** and which I think becomes ***vanishingly unlikely*** to be made out in this case in the face of the existence of almost any kind of agreement with AI companies. I'm not saying one can definitively decide all aspects of it, but the likelihood that that's a promising area that would make continued discovery in this area proportional to the needs of the case is low enough that I am going to deny Suno's request for discovery in two post complaint unexecuted AI licensing agreements."

*Id.* at 11:6–20 (emphasis added).[3] The same result should follow here. Copyright misuse is a "vanishingly unlikely" theory, and Suno's attempt to seek "discovery into [Apple's] future deals and ongoing deals and post complaint deals is a long way from the home turf of this case." *Id.* at 11:8–9, 11:12; *see also id.* at 14:5–7 ("[W]e're well past a point of diminishing returns on a kind of defense that I think is largely theoretical in this case . . . ."). Having failed to obtain this information from a party, Suno now seeks it from a non-party. And regardless, even if copyright misuse were recognized in the First Circuit, Suno cannot dispute that copyright misuse turns on ***Plaintiffs'*** conduct, not Apple's.

***Second***, Suno claims that Apple's contracts with Plaintiffs are relevant to the alleged dilution of Plaintiffs' royalties because "Plaintiffs' contracts with Apple define what Plaintiffs are paid for the use of their recordings," discuss "provisions that specifically *exclude* AI-generated content from the royalty pool," and the ways "in which Apple implements those provisions in the real world will determine what actually happened to plaintiffs during the period at issue." Opp. at 13. Suno also relies on testimony that Apple has been [redacted] Opp. at 15. But each of these arguments depends on ***past*** agreements, negotiations, and implementations of Apple's

---

[3] Magistrate Judge Levenson's decision at the hearing was memorialized in the subsequent order. *See* No. 24 Civ. 11611, Dkt. 206 (Order Regarding Discovery Disputes).

contracts[4]—subjects that Suno agreed to exclude when it limited this Topic to current and ongoing negotiations. *See* Opp. at 14–15 (admitting that "Suno agreed to narrow this deposition topic to exclude past and signed agreements and to limit the deposition topic to current and ongoing negotiations."). Suno thus cannot rely on past agreements and implementations as a basis for the relevance of current and ongoing negotiations. And regardless, Suno does not dispute that Plaintiffs ***already*** have produced those past agreements. *See* Opp. at 20. Suno can see precisely what provisions are in the agreements and how royalties are calculated; it does not need to depose Apple for that information.

***Third***, Suno claims that Plaintiffs have put "the give-and-take of their DSP negotiations at issue, including as a discrete form of the actual damages claimed," pointing to testimony that UMG [redacted] and to UMG's interrogatory response that AI protections are [redacted]." Opp. at 14–15. But that argument proves Apple's point. Every piece of evidence Suno cites regarding Plaintiffs' "actual damages" is ***Plaintiffs'*** evidence: Plaintiffs' concessions, in Plaintiffs' negotiations, described in Plaintiffs' interrogatory responses and by Plaintiffs' witnesses. Apple's internal view of a negotiation to which Plaintiffs are the counterparty adds no pertinent evidence. Moreover, each piece of "evidence" that Suno cites to establish the relevance of this testimony concerns ***other*** companies, not Apple. Suno cites Nash Dep. 344:19–345:1 and Dworkin Dep. 340:5–9, but neither mentions nor alludes to Apple; both merely reference [redacted] broadly. *See* Dkt. 12-6; Dkt. 12-7. Walker Dep. 88:22–89:3 likewise does not mention Apple—[redacted] *See* Dkt. 12-9. And Suno's cited UMG interrogatory responses do not mention Apple either—[redacted] generally. Dkt. 12-4 at 26. Accordingly, ***none*** of Suno's citations makes even a marginal showing of why ***Apple's*** contract negotiations are relevant.

***Fourth,*** Suno argues that Apple's ongoing contracts and negotiations are relevant to fair use factor four (the effect of the use on the potential market for or value of the copyrighted work) because they will

---

[4] Suno's argument that it provided specific contractual provisions at issue fails for the same reasons—Suno identified contracts (not provisions within ongoing contracts), and each of the contracts it identified to Apple was a ***past*** contract going back as far as 2015, and thus irrelevant to Topic 2.

show whether Apple will license Plaintiffs' content to develop its own AI models. Opp. at 13–14. Suno never raised this issue with Apple in any conferral before this briefing. And the argument is also wrong. In the underlying litigation, Plaintiffs explained, and the District of Massachusetts agreed, that Plaintiffs already produced at least ten licenses showing the existence of a market for music training data; whether there is the potential for another such license is irrelevant. No. 24 Civ. 11611, Dkt. 201 at 10:20–22; 11:18–20.

***Fifth***, Suno argues that Apple's declarations describing its AI policies are "not a substitute" for testimony because Suno is "entitled to test Apple's characterization, not simply accept it." Opp. at 15. That reasoning would defeat any resolution of non-party discovery by declaration, including the five Topics and the document subpoena that Suno agreed to resolve exactly that way. *Id.* at 9–10. A generalized wish to depose a non-party is not a showing of relevance, and Suno identifies nothing in the Bottoms Declarations that it contends is inaccurate or incomplete.

***Finally***, Apple does not currently exclude AI-generated content from its royalty pool, which only underscores the irrelevance of this Topic. *See* Mot. at 11. Suno insists that it needs to understand what Plaintiffs have asked of Apple and how Apple has responded. But Apple's declaration says precisely that: Apple does not currently exclude AI-generated content from its royalty pool. *Id.* Testimony about whether an anti-dilution arrangement is being discussed would add nothing but speculation about a deal that does not exist.

**2. Apple's Assessment of the Commercial Viability of Apple Music Without Plaintiffs' Content Is Irrelevant**

Suno goes even further—it seeks not just testimony on ongoing negotiations but also Apple's "assessment" of the "commercial viability" of Apple Music without Plaintiffs' content. This Topic is similarly irrelevant. Suno claims that "whether Plaintiffs had the leverage and ability" to wield their copyrights is relevant to its copyright misuse theory, citing *Lasercomb America, Inc. v. Reynolds*, 911 F.2d 970, 979 (4th Cir. 1990), and *Covetrus, Inc. v. Actian Corp.*, No. 2:21 Civ. 97, 2024 WL 4581285, at *2 (D. Me. Oct. 25, 2024). Opp. at 15. Even if copyright misuse were a viable theory of the case (the District of Massachusetts has indicated otherwise), both cases support Apple's argument that copyright misuse turns on ***Plaintiffs' conduct***—whether Plaintiffs used their copyrights to control areas outside

copyright's limited monopoly. *See Lasercomb*, 911 F.2d at 979 ("The question is whether ***Lasercomb*** is using its copyright in a manner contrary to public policy.") (emphasis added); *Covetrus*, 2024 WL 4581285, at *2. Apple's internal assessments of Plaintiffs' catalogs (to the extent any exist) are irrelevant to whether Plaintiffs did, in fact, improperly leverage their copyrights.

Moreover, *Lasercomb* found that "the anticompetitive language in Lasercomb's licensing agreement . . . amounts to misuse of its copyright." *Lasercomb*, 911 F.2d at 979. It was thus the ***language and use*** of the agreement itself that constituted copyright misuse. *Id.* Suno's reliance on *Practice Management Information Corp. v. American Medical Association*, 121 F.3d 516, 521 (9th Cir. 1997), *amended*, 133 F.3d 1140 (9th Cir. 1998), underscores the point: there, the court found that "[t]he adverse effects of the licensing agreement are apparent. The ***terms under which the AMA agreed to license use*** of the CPT to HCFA gave the AMA a substantial and unfair advantage over its competitors." *Id.* (emphasis added). Suno's theory of copyright misuse therefore turns on the executed license agreements themselves—not on a licensee's internal assessments of a prospective license agreement.

Suno's fallback is that only Apple can offer its "own view of how essential Plaintiffs' catalogs are to Apple Music." Opp. at 16. But that view has nothing to do with relevance. Because copyright misuse turns on ***Plaintiffs'*** conduct, *see supra* § III.A.1, Apple's internal view of the value of Plaintiffs' catalogs reflects nothing about whether Plaintiffs improperly used their catalogs. And Suno's citations to ***Plaintiffs*** wielding their [redacted] fare no better for the same reason.

### 3. Apple's Identification, Understanding, and Policies Regarding Streaming Fraud Generally Are Irrelevant

Apple's identification, understanding, and policies about streaming fraud are also irrelevant. Suno is not accused of streaming fraud, and Apple's policies[5] on it have no bearing on whether Suno committed copyright infringement or whether Plaintiffs misused their copyrights.

In response, Suno claims that it is irrelevant whether any party in the underlying litigation has made statements regarding streaming fraud or whether Plaintiffs made such statements publicly. But

[5] In the two Bottoms Declarations, Apple produced exhibits detailing Apple Music guidelines related to AI-generated music. These included a newsletter to content providers clarifying how Apple Music applies a penalty for AI-generated tracks with evidence of streaming manipulation. *See* Declaration of Bethany Stevens, Ex. 1 (APL-UMGSUNO_00000003). Therefore, to the extent Suno seeks information on streaming manipulation policies related to AI-generated works, Apple has provided such evidence.

Suno's inability to point to anything tying streaming fraud to the theories in this case is ***exactly*** what makes the Topic irrelevant. Relevance is measured against the "claim[s] or defense[s]" actually at issue, Fed. R. Civ. P. 26(b)(1), not against every view a party's witnesses may hold. Suno's cited testimony reflects only general observations about streaming fraud in the music industry. Opp. at 17. For example, Suno cites Walker Dep. 15:3–6, which discusses [redacted]. *See* Dkt. 12-9. Similarly, Suno cites Nash Dep. 248:16–23, [redacted] *See* Dkt. 12-6. That is consistent with, rather than contrary to, Apple's account of its conferral with Plaintiffs, in which Plaintiffs disclaimed any streaming fraud argument. Means Decl. ¶ 20. Indeed, Plaintiffs appear to have included this topic in their own deposition subpoena ***because*** they intended to stand on whatever position Suno takes on this topic, not because they were advancing it as a relevant theory. And Plaintiffs' public statements about streaming fraud do not put the subject at issue in this litigation or make Apple's general streaming fraud policies relevant. *See* Opp. at 17.

When confronted with Suno's failure to identify any restriction Apple supposedly adopted because of Plaintiffs' fraud concerns, Suno responds that it "cannot be faulted for failing to describe in advance the very facts it seeks to discover." Opp. at 18. But the burden is on Suno to demonstrate relevance. *Williams*, 2019 WL 5963969, at *4. Seeking discovery on an indeterminate category of "policies" that cannot be tied to any articulated claim or defense is a fishing expedition, and the burden of such irrelevant discovery on a non-party "would be by definition 'undue.'" *Id.* at *3.

### 4. Apple's Communications with Plaintiffs Regarding Suno Are Irrelevant

Finally, Suno's Topic 7 also seeks irrelevant testimony. Suno claims that this Topic goes to whether Plaintiffs have targeted Suno-generated content on Apple's platform, what they demanded of Apple, and what they told Apple about this case. Opp. at 18. Suno does not identify which legal theory, claim, or defense this testimony supports. To the extent it is seeking information in support of its copyright misuse theory, the Topic remains irrelevant because copyright misuse depends on ***Plaintiffs'*** actions—and if such communications were relevant, Plaintiffs already would be expected to have produced them.

### B. The Disputed Topics Seek Information Available Through Plaintiffs

Even if the Disputed Topics had some relevance (which they do not), the Deposition Subpoena still should be quashed because the information is available from Plaintiffs. Rule 26 requires the Court to limit discovery that "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). This limit applies with force to non-parties, as "[c]ourts are particularly reluctant to require a non-party to provide discovery that can be produced by a party." *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 410 (C.D. Cal. 2014). Accordingly, "[a] court may prohibit a party from obtaining discovery from a non-party if that same information is available from another party to the litigation." *Id.*; *see also Elec. Scripting Prods., Inc. v. HTC Am., Inc.*, No. 17 Civ. 5806, 2021 WL 3773607, at *5 (N.D. Cal. Aug. 25, 2021).[6] Suno does not meaningfully engage with this rule, and each of the Disputed Topics concerns information that is equally available through the parties.

Topic 7 is the clearest example. It seeks testimony regarding Apple's communications with Plaintiffs or their agents about Suno or this case. Suno does not dispute that testimony on Apple's communications with Plaintiffs or their agents is available directly from Plaintiffs, who are parties to the Massachusetts Litigation and a "source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). And any testimony regarding "oral communications" between Apple and

---

[6] Suno's attempts to distinguish Apple's cited cases confirm the rule rather than the exception. As Suno admits, in *Electronic Scripting*, 2021 WL 3773607, at *1, *3–4, the "topics sought the non-party's own business information 'without even a hint of relevance' to the claims;" in *Personal Audio LLC v. Togi Entertainment, Inc.*, No. 14-mc-80025 RS (NC), 2014 WL 1318921, at *2–3 (N.D. Cal. Mar. 31, 2014) the information sought "'should be in the possession of the party defendants;'" in *Price v. Peerson*, No. CV 13-03390, 2014 WL 12687411, at *1 (C.D. Cal. Apr. 8, 2014), a plaintiff sought information "from deponents with 'less or no information' than the party;" and in *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. at 411, "the requesting party conceded it did 'not know whether [the witness] has relevant information.'" Opp. at 19, n.10 (citing cases). The same is true here—Suno seeks information that is irrelevant to the claims in the Massachusetts Litigation, from a non-party with less information than Plaintiffs, and on a fishing expedition for "relevant" information. Similarly, in *Soto v. Castlerock Farming & Transport, Inc.*, the court denied a motion to quash in part only after a party to the case refused to produce responsive documents, while reaffirming that "when an opposing party and a non-party both possess documents, the documents should be sought from the party to the case." 282 F.R.D. 492, 505-06 (E.D. Cal. 2012). And in *In Re: the Subpoena to Produce Documents of Clapp, Moroney, Bellagamba, Vucinich, Beeman & Scheley*, the court quashed the requests that the subpoenaing party conceded were aimed at the opposing party's "knowledge," holding that the subpoenaing party "should then ask [the party], a party to the [underlying] Action, for this information." No. 14 MC 80191, 2014 WL 3784112, at *4 (N.D. Cal. July 31, 2014). The same is true here—Suno seeks information about Plaintiffs' actions to support its copyright misuse theory, but that knowledge must come from Plaintiffs, not Apple.

Plaintiffs is equally available by deposing Plaintiffs, rather than Apple.[7]

Suno emphasizes that Topic 7 is limited to testimony about Apple's communications with Plaintiffs and their agents and "does not seek Apple's internal views." Opp. at 18. But that concession only confirms that Plaintiffs or their agents are party to ***every*** communication the Topic reaches, and that Plaintiffs are therefore an equally available and far less burdensome source for the same information. Suno claims that deposing Apple is necessary because Plaintiffs' witnesses [redacted] *Id.* But a witness's failure to recall is a reason to pursue Plaintiffs' documents and further party testimony; it is not evidence that the information is unavailable from Plaintiffs. Nor does the testimony Suno cites concern this Topic as narrowed. Suno cites Walker Dep. 176:20–177:5, but [redacted], not communications "regarding Suno or this case." *See id.* at 8.

Similarly, Topic 2 seeks testimony on current negotiations between Apple and Plaintiffs regarding music licensing, royalties, and artificial intelligence initiatives. But every demand Plaintiffs have made and every response Apple has given necessarily passed through Plaintiffs, who are the proper source of such information. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). Nor do the deposition excerpts Suno cites show otherwise. Plaintiffs' witnesses testified that the negotiations are [redacted] and that [redacted] and [redacted] Opp. at 20 (quoting Walker Dep. 178:3–11; Dworkin Dep. 33:16–18, 37:25–38:3). That a negotiation remains open does not mean only Apple can describe it; it means the information is highly sensitive and there is no final position for any witness to describe. And whatever Apple has said in those negotiations was said to Plaintiffs, whose documents and other witnesses are available to Suno.

What remains is Suno's request for Apple's "unique perspective"—including "whether Apple considered licensing the Plaintiffs' works for its own AI-related projects, or whether Apple's licensing position was influenced by the emergence of Suno." *Id.* at 20. That is not testimony about negotiations with Plaintiffs at all; it is a request for Apple's internal deliberations about its own business strategy,

---

[7] Suno also asserts that Apple has "abandoned" its objection that this Topic implicates privileged communications. Opp. at 18 n.9. Apple has not abandoned that objection and expressly reserves all privilege and work-product objections should any deposition proceed.

which reaches beyond Topic 2 as narrowed. And Suno's argument that Apple will have "unique testimony about its approach to Plaintiffs' demands that Apple restrict non-infringing AI-generated content" confirms this is a fishing expedition. *See id.* Copyright misuse turns on Plaintiffs' conduct, and evidence of what Plaintiffs demanded is with Plaintiffs. Apple's internal reasons for how it responded do not show whether Plaintiffs misused their copyrights.

Topic 4 seeks testimony about Apple's internal assessments of Apple Music's "commercial viability" without Plaintiffs' catalogs, purportedly to show how much leverage Plaintiffs hold over DSPs to support a copyright misuse theory. As explained above, this information is irrelevant to copyright misuse, and for the same reasons, evidence of copyright misuse—whether Plaintiffs did, in fact, use their catalogs anticompetitively—is with Plaintiffs or in contracts that Plaintiffs have presumably produced.

Finally, Topic 5 concerns testimony about the types and frequency of streaming fraud on Apple Music, how it is discovered, its causes, and Apple's policies for responding to it. But Apple already produced documents on its policies and approach to streaming fraud in this litigation, and its policies are sent to Apple Music partners. *See* Declaration of Bethany Stevens Ex. 1 (APL-UMGSUNO_00000003) (Apple newsletter discussing streaming manipulation generally). Plaintiffs also have those policies; further discovery is unneeded.

### C. Suno Cannot Meet Its Burden to Demonstrate Substantial Need for Apple's Highly Commercially Sensitive Information

Suno does not dispute that under *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 684 (N.D. Cal. 2006), "[o]nce the nonparty shows that the requested information is a trade secret or confidential commercial information, the burden shifts to the requesting party to show a 'substantial need for the testimony or material that cannot be otherwise met without undue hardship.'" Apple has demonstrated the highly commercially sensitive nature of the testimony sought: as explained in the declaration of Sam Bottoms submitted with Apple's motion to quash, Apple's ongoing negotiation of licenses, royalties, and matters related to artificial intelligence; its internal policies on handling streaming fraud; and its commercial assessments of the "viability" of Apple Music are all highly commercially sensitive and confidential. Dkt. 1-10 ("Bottoms MTQ Decl.") ¶¶ 4–6. The Bottoms MTQ Declaration further identifies the specific harm that disclosure of this testimony would cause. Bottoms MTQ Decl. ¶¶ 4–6. Disclosure would give

"licensors, counterparties, and competitors insight into Apple's strategies and bargaining positions," thus harming "Apple in current and future negotiations," and would undermine "the integrity of the Apple Music service and harm Apple, its artists, and its users." *Id.* Those harms are especially acute here because Suno would have Apple disclose its bargaining positions to the very counterparty across the table in such negotiations. While the protective order may offer some protection during discovery, it cannot ensure that the information stays protected at trial or later in the case, where Apple, as a non-party, will have little insight into or control over its use. That is a particularized showing, and Suno offers no evidence to the contrary. The burden therefore shifts to Suno, but Suno has not shown—and cannot show—a "substantial need" for any of the testimony sought. *See* Opp. at 22. A singular reference that it "has shown a substantial need" is not sufficient. *Id.*

Suno's remaining arguments do not save it. Suno disregards Apple's security concerns about disclosure of its streaming-fraud detection methods, claiming that "Suno is not interested in the 'how.'" Opp. at 22. But that claim is contradicted by the very language of the narrowed Topic Suno propounded, which seeks "the types and frequency of Streaming Fraud on Apple Music, ***how Streaming Fraud is typically discovered by Apple***, ***Apple's understanding of the typical causes of Streaming Fraud***, and ***Apple's standard policies when responding to an incident of Streaming Fraud***." Mot. at 9 (emphasis added). And while purporting to narrow the Topic in its Opposition, Suno actually broadens it by rewording the Topic to include "whether Apple is aware of any link between AI-generated content and streaming fraud, and if so, what that link is"—language that appears nowhere in the Topic as narrowed. *See* Opp. at 22. Regardless, the three narrowed categories of Topic 5 that Suno proposes—(1) the categories of streaming fraud of which Apple is aware; (2) generally, how Apple responds to streaming fraud; and (3) whether Apple is aware of any link between AI-generated content and streaming fraud and, if so, what that link is—would still be harmful if disclosed to Suno, Apple's competitor DSPs, or any external actor seeking to financially benefit from streaming manipulation.

Moreover, that a protective order is in place in the underlying litigation does not "fully answer[]" Apple's concerns about potential disclosure of this highly commercially sensitive information. Opp. at 21. Suno does not dispute the principle in *Philhower v. Philhower*, No. 24 Civ. 74, 2024 WL 4720932, at *6 (C.D. Cal. Oct. 15, 2024), that a protective order "itself, is not a guarantee that private information

produc[ed] under the Protective Order will be safeguarded from disclosure."[8] *See also Waymo LLC v. Uber Techs., Inc.*, No. 17 Civ. 939, 2017 WL 3581171, at *1 (N.D. Cal. Aug. 18, 2017) (quashing deposition testimony in part because even attorneys-eyes-only "orders do not guarantee that the information will not be disclosed.").

**D. Apple Has Demonstrated Suno's Subpoena Causes Undue Burden**

Suno asserts that Apple has shown no undue burden in the time or cost of preparing a witness for deposition. Opp. at 23. But in deciding whether to quash a subpoena, undue burden is not measured solely by the time or cost to prepare a witness. Courts assess undue burden by weighing multiple factors, including "relevance, the need of the party for the [discovery], the breadth of the [discovery] request, the time period covered by it, the particularity with which the [discovery is] described and the burden imposed." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005). As explained throughout Apple's opening brief, each factor favors Apple. The Disputed Topics are irrelevant, *supra* § III.A, so any burden is by definition "undue." *See Williams*, 2019 WL 5963969, at *3. Moreover, the Disputed Topics are sweeping. For example, Topic 4 reaches "any studies, analyses, projections, discussions, or communications" about Apple Music's viability without "all or a material portion of one or more Plaintiffs' catalogs, or any large catalog of sound recordings licensed by Apple." Mot. at 9. Topic 5 similarly demonstrates Suno's inability to describe the discovery sought with particularity: Suno admits that it cannot identify any "restrictions" it claims Apple took related to AI. Opp. at 17–18. If such restrictions exist, Suno could just as easily find them in the terms of the contracts Plaintiffs produced. In addition, much of the testimony sought is available from Plaintiffs, who are parties to the underlying litigation. *See Akkawi v. Sadr*, No. 20 Civ. 1034, 2022 WL 17722605, at *3 (E.D. Cal. Dec. 15, 2022) (quashing subpoena where requesting party did not offer specific argument on why the non-party discovery was not equally available from a party). And Suno ignores that "[c]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs." *Amini*, 300 F.R.D. at 409 (internal quotations and citations omitted).

---

[8] Suno contends that Apple cannot claim sensitivity because it already produced data and declarations under the same Protective Order and agreed that Plaintiffs could share certain Apple information with their experts. Opp. at 21. Apple's cooperation should not be held against it. Those productions were negotiated and written, and Apple controlled their scope.

Accordingly, requiring non-party Apple to prepare a corporate designee to testify on current negotiations; Apple Music's "commercial viability"; fraud operations; and communications with Plaintiffs and their agents—after more than a year of cooperation, two sworn declarations with exhibits, and the resolution of five of nine deposition topics—imposes an undue burden that Suno cannot justify.

## IV. IN THE ALTERNATIVE, A PROTECTIVE ORDER IS APPROPRIATE

Contrary to Suno's characterizations, Apple has explained why a protective order is appropriate as an alternative to quashing the subpoena. Under Rule 26(c)(1), a protective order may be issued for "good cause," and Apple has met that standard: the Disputed Topics are irrelevant, seek information equally available through party discovery, and call for highly confidential information for which Suno has not demonstrated a substantial need. *Supra* §§ III.A–C. Suno's attempts to distinguish *Capriotti* and *Fausto* on their facts, Opp. at 23–24, miss the point: Suno does not dispute that the irrelevance of the proposed subject matter and the absence of any showing of need establish good cause. *United States v. Capriotti*, No. 11 Civ. 847, 2012 WL 2994244, at *2 (E.D. Cal. July 20, 2012); *Fausto v. Credigy Servs. Corp.*, No. 07 Civ. 5658, 2008 WL 4793467, at *2 (N.D. Cal. Nov. 3, 2008). Should the Court conclude that some testimony is warranted, Apple requests a protective order providing that all testimony be designated "Highly Confidential – Outside Counsel Only" under the Protective Order and not be disclosed to any party representative or other third party.

## V. TRANSFER

Apple is not currently aware of exceptional circumstances warranting transfer under Federal Rule of Civil Procedure 45(f). There is a concern, however, that a ruling granting discovery on Suno's copyright misuse theory may conflict with the Massachusetts court's prior orders. In addition, to the extent Suno anticipates subpoena-related disputes with other, similarly positioned DSPs, the Court may determine that such disputes constitute exceptional circumstances and that transfer of this matter to the District of Massachusetts is appropriate to preserve judicial resources and avoid inconsistent outcomes. As a result, Apple would consent to transfer of this matter to the District of Massachusetts.

## VI. CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court grant its motion to quash or, in the alternative, issue a protective order barring Suno from seeking this discovery from non-party Apple.

DATED: November 3, 2026

Respectfully submitted,
WALKER STEVENS CANNOM LLP

By: */s/ Bethany M. Stevens*

Hannah L. Cannom (SBN 245635)
hcannom@wscllp.com
Bethany M. Stevens (SBN 245672)
bstevens@wscllp.com
500 Molino Street #118
Los Angeles, CA 90013
Telephone: (213) 337-9972
Facsimile: (213) 403-4906

*Attorneys for Non-Party Apple Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2026, true and correct copies of the foregoing document and all related attachments have been duly served by electronic mail to counsel for Suno, Inc and UMG Recordings, Inc., Capitol Records, LLC, and Sony Music Entertainment.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 3, 2026.

*/s/ Bethany M. Stevens*
Bethany M. Stevens